[657 NYS2d 717]

In the Matter of ANTHONY "TOOTS" LABELLA, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, April 28, 1997

### APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains *(Gary D. Egerman* of counsel), for petitioner.

*Richard E. Grayson,* White Plains, for respondent.

### OPINION OF THE COURT

Per Curiam.

The petition contains nine charges of professional misconduct

against the respondent. The supplemental petition contains three additional charges. After a hearing, the Special Referee sustained all of the charges except Charge Eight. The Grievance Committee now moves to confirm the report of the Special Referee. The respondent cross-moves to confirm the report of the Special Referee insofar as it failed to sustain Charge Eight and to disaffirm the report insofar as it sustained the remaining charges.

Charge One alleged that the respondent is guilty of engaging in conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

Virginia Rubin was the beneficiary of a trust by which she was to receive $292,303.53 in or about October 1991. She and her husband, Fernando, consulted with the respondent and advised him that they wanted to spend the funds to purchase a piece of real property, to build a home, to purchase a new car, and to pay off existing debts. They also wanted to invest the balance of the funds. At a meeting in the respondent's office, Mrs. Rubin suggested that the money be put in an irrevocable trust because her mother had such a trust. The respondent failed to suggest to the Rubins or discuss with them any other options. The respondent retained the services of Christopher Martens, Esq., to prepare the trust agreement, which designates the respondent as the trustee. At a meeting on December 13, 1991, the respondent instructed the Rubins to execute the trust agreement without explaining its terms or giving them the opportunity to fully read it.

Charge Two alleged that the respondent is guilty of engaging in conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

The respondent advised the Rubins that his usual fee was 15%, but that he would only charge them 5%. Furthermore, the Rubins understood that the respondent would be paid as services were rendered. In or about October 1991, the respondent, as the trustee, received $249,267.21 to fund the trust. On December 14, 1991, the day after the trust agreement was signed, the respondent withdrew 5%, or $12,463.36, as his fee. On January 24, 1992, the respondent, as the trustee, received an additional $43,036.32, from which he deducted 5%, or $2,151.82, on February 26, 1992. Thus, the respondent withdrew the bulk of his fee immediately after the trust funds were

received and before he provided substantial services as the trustee of the Rubin irrevocable trust.

Charge Three alleged that the respondent is guilty of engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

The respondent disbursed $9,100 from the trust to buy a new car for the Rubins and $25,104.80 to satisfy their existing debts. He also purchased a piece of real property in Wallkill, New York, on their behalf at a cost of approximately $34,000. He then retained the services of Brian Watson of Watson Homes to build a house for the Rubins at a cost of $116,000. The respondent failed to execute a contract with Mr. Watson, who had never built a new home, and authorized the construction without limiting the amount of money to be expended. The respondent breached his fiduciary duty to safeguard the trust funds by permitting the cost of construction to disgorge the entire balance of the trust, approximately $200,000. In addition, the respondent spent $10,000 of his own funds to pay Mr. Watson, and the Rubins spent another $15,000 to obtain a certificate of occupancy for the house. The Rubins subsequently prevailed against the respondent in a civil action to recover damages for breach of fiduciary duty commenced in the Supreme Court, Orange County.

Charge Four alleged that the respondent is guilty of engaging in conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

On January 3, 1994, the respondent was assigned to prosecute an appeal from an order of the Family Court, Orange County, in *Matter of Alonso v O'Brien*. On June 15, 1994, the Clerk of this Court, Martin Brownstein, wrote to the respondent regarding the status of the appeal, and the respondent failed to answer. The respondent also failed to answer a second letter advising him that, if a satisfactory written report on the status of the appeal was not received by August 12, 1994, the matter would be referred to the Grievance Committee. The respondent was subsequently relieved of the assignment.

Charges Five and Six alleged that the respondent is guilty of neglecting a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30 [a] [3]), and of engaging in conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]).

On November 1, 1993, the respondent was assigned to represent the defendant Michael Esposito on an appeal from a judgment of the County Court, Orange County, rendered September 15, 1992. On May 2, 1994, a status clerk sent a letter to the respondent regarding the status of the appeal. The respondent failed to reply. On June 10, 1994, a second letter was sent by Mr. Brownstein. In response, the respondent's partner, Gerard M. Carey, advised Mr. Brownstein that he met with Mr. Esposito and that a brief would be filed no later than September 1, 1994. On August 1, 1994, Mr. Brownstein sent another letter to the respondent indicating that more than 270 days had elapsed since the matter was assigned to him and that a brief had not yet been filed. The letter required a response within 10 days. The respondent failed to reply. On September 27, 1994, Mr. Brownstein sent a fourth and final letter to the respondent indicating that, if the appeal were not perfected by October 21, 1994, he would recommend to the Court that the respondent be relieved of the assignment and the matter be referred to the Grievance Committee. The respondent again failed to reply, and he was relieved of the assignment to prosecute Mr. Esposito's appeal.

Charge Seven alleged that the respondent is guilty of neglecting a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30 [a] [3]).

John F. Stroppel retained the respondent to contest his suspension from his position as a captain in the Orange County Sheriff's Department on November 5, 1993. The respondent submitted a timely answer to the charges against Mr. Stroppel and a demand for a bill of particulars. On January 6, 1994, the Sheriff's Department issued additional charges against Mr. Stroppel and terminated his employment. Mr. Stroppel gave the new charges to the respondent, who advised him that he would handle the matter. The respondent, however, failed to file an answer to the second set of charges. Between February 6, 1994 and February 25, 1994, Mr. Stroppel continued to receive his salary. On February 25, 1994, the Sheriff's Department issued a third set of charges against Mr. Stroppel, advising him that he would be suspended without pay due to the respondent's failure to answer the second set of charges. In response to the third set of charges, the respondent sent a letter to the Sheriff's Department on March 8, 1994, requesting a hearing. The letter, however, was not timely. As a result of the respondent's neglect, Mr. Stroppel was forced to settle the matter on less than favorable terms.

Charge Nine alleged that the respondent is guilty of failing to properly supervise a lawyer in his employ, in violation of Code of Professional Responsibility DR 1-104 (A) (2) (22 NYCRR 1200.5 [a] [2]).

In September 1993, Dorothy Maurice retained the respondent regarding a matrimonial matter. In November 1993, Ms. Maurice met with Glen H. Rosenstein, an associate of the respondent who had been assigned to her case. Mr. Rosenstein failed to make a timely motion to hold Ms. Maurice's husband in violation of a support order.

Charge Ten alleged that the respondent is guilty of neglecting a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30 [a] [3]).

On August 26, 1993, Joan M. Decker, who was injured while in the employ of the Middletown Psychiatric Center, retained the respondent to represent her in connection with her workers' compensation and disability retirement claims. A workers' compensation hearing was scheduled for August 31, 1993. However, since the respondent was unable to review the matter before the hearing, he advised Ms. Decker to have her prior counsel appear and request an adjournment. On May 12, 1994, Ms. Decker advised the respondent's office that the hearing was rescheduled for June 1, 1994. The respondent failed to appear on that date. On July 8, 1994, Ms. Decker hand-delivered a letter to the respondent's office advising him that the hearing was rescheduled for July 15, 1994. The respondent again failed to appear. On July 28, 1994, Ms. Decker was advised by the respondent's office that the respondent was busy with other matters and that she should retain other counsel. Ms. Decker contacted the law firm of McGillicuddy and Siegel, the firm recommended by the respondent's office, and asked the respondent to forward her files to that firm. The respondent failed to do so.

Charge Eleven alleged that the respondent neglected a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30 [a] [3]).

Between August 1993 and July 1994, the respondent performed no work of any substance or merit on Ms. Decker's disability retirement claim, although he was given all the papers and was paid $345 in connection with that matter.

Charge Twelve alleged that the respondent is guilty of neglecting a legal matter entrusted to him, in violation of Code

of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30 [a] [3]).

On September 21, 1989, William Morris was charged with assault. It was thereafter determined that Mr. Morris was not at the scene of the crime on the night in question, and a Grand Jury failed to indict him. In October 1990, Mr. Morris retained the respondent to commence an action to recover damages for malicious prosecution and defamation. A summons and complaint dated October 2, 1990 was served on the defendants, who subsequently answered and counterclaimed. As a result of the respondent's neglect, the case has not moved forward. To date, no examinations before trial have been held, and letters and telephone calls to the respondent have not been answered.

In view of the evidence adduced at the hearing, the Grievance Committee's motion to confirm the report of the Special Referee is granted. Moreover, the branch of the respondent's cross motion which is to confirm the report of the Special Referee insofar as it failed to sustain Charge Eight is granted, and the respondent's cross motion is otherwise denied.

The respondent's prior disciplinary history includes two Letters of Caution in 1989 and 1992 for neglecting legal matters entrusted to him.

In determining an appropriate measure of discipline to impose, the respondent asks the Court to consider his numerous community and civic activities and his reputation as a tough litigator who represents his clients to the fullest extent possible. He also asks the Court to consider that much of his practice is devoted to child abduction cases, which require him to travel and to be away from his office for long periods of time.

Under the totality of the circumstances, the respondent is suspended from the practice of law for a period of five years.

MANGANO, P. J., BRACKEN, ROSENBLATT, MILLER and JOY, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the branch of the respondent's cross motion which is to confirm the report of the Special Referee insofar as it failed to sustain Charge Eight is granted, and the respondent's cross motion is otherwise denied; and it is further,

Ordered that the respondent, Anthony "Toots" LaBella, is suspended from the practice of law for a period of five years, commencing May 28, 1997, and continuing until the further

order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of five years upon furnishing satisfactory proof (a) that during the said period he refrained from practicing or attempting to practice law, (b) that he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended and resigned attorneys (22 NYCRR 691.10), and (c) that he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Anthony "Toots" LaBella, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.